

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALK:AP
F. #2023R00106

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 14, 2025

By E-mail and ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Eugene Tufaro
     Criminal Docket No. 25-73 (KAM)

Dear Judge Matsumoto:

  The government respectfully submits this letter in advance of the defendant Eugene Tufaro's sentencing, scheduled for July 28, 2025, for distribution and possession with intent to distribute heroin and fentanyl, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(C). After his arrest, the defendant entered the Pretrial Opportunity Program ("POP"), which he successfully completed in April 2025. For the below reasons, the government respectfully submits that a probationary sentence to include participation in the Relapse, Accountability and Prevention Program ("REAP") is sufficient, but not greater than necessary, to achieve the goals of sentencing.

I. The Offense Conduct

  On approximately 17 occasions between October 25, 2022 and April 26, 2023, the defendant sold large quantities of heroin containing fentanyl to an undercover officer (the "UC") on public streets in Staten Island, New York. See Presentence Investigation Report dated June 23, 2025 ("PSR") ¶ 10. These sales were recorded by the UC.

  The narcotics purchases typically unfolded in a similar pattern: the UC and the defendant agreed on the terms of the purchase (i.e., the type of narcotic, amount, price and meeting location). See PSR ¶ 11. During each meeting, the UC gave the defendant cash in exchange for the agreed-upon narcotics. See id. For instance, one of the largest sales took place on April 4, 2023 on a residential block in Staten Island. See PSR ¶ 12. During that transaction, the defendant sold the UC approximately 900 glassines of heroin in exchange for $3,600. See id. On April 26, 2023, the defendant was arrested with over 2,000 glassines of heroin after the

defendant had arranged to sell that quantity of heroin to a different undercover officer in exchange for $7,200.  See PSR ¶ 16.

Pursuant to a search warrant of the defendant's residence, law enforcement agents recovered additional glassines of heroin and numerous varieties of prescription medication inconsistent with legitimate use.  See PSR ¶ 16.  During a post-arrest statement, the defendant admitted to actively selling large quantities of heroin.  See id.

In total, the defendant sold thousands of glassines containing a mixture of controlled substances, including approximately 146 grams of fentanyl, 114 grams of fentanyl analogue and 102 grams of heroin to the UC over the course of approximately six months.  See PSR ¶ 17.

II.     The Defendant's Criminal History

The defendant has been convicted of three misdemeanors and one felony—three of those convictions were for drug-related crimes.  See PSR ¶¶ 35-38.  The defendant's 2017 felony conviction for third-degree criminal possession of a controlled substance stemmed from three sales of heroin to an NYPD undercover officer in Staten Island.  See PSR ¶ 37.  Upon execution of a search warrant at the defendant's residence, law enforcement recovered additional quantities of heroin, cocaine, scales and empty packaging.  See id.  The defendant was sentenced to a term of two years' imprisonment in connection with that conviction.  See PSR at ¶ 37.

III.    Guidelines Calculation and Statutory Framework

The parties agree with the Guidelines calculation set forth in the PSR.  See PSR ¶¶ 24-33.  Specifically, the offense level is calculated as follows:

| | |
|---|---:|
| Base Offense Level (U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(5)) | 30 |
| Less: Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a) and (b)) | -3 |
| Total: | 27 |

The defendant's criminal history category is III and, as such, his corresponding advisory Guidelines range of imprisonment is 87 to 108 months' imprisonment.  See PSR ¶ 82.

IV.     The Appropriate Sentence

The government respectfully submits that a sentence of probation to include participation in the REAP program would be sufficient, but not greater than necessary, to achieve the goals of sentencing here.  See 18 U.S.C. § 3553(a).

As the Court is aware, an appropriate sentence should, among other things, reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.  See 18 U.S.C. § 3553(a)(2)(A).  In addition, an appropriate sentence should consider the history and characteristics of the defendant, see id. § 3553(a)(1), and should afford adequate

deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner, id. § 3553(a)(2)(B)-(D).  In weighing these factors, "a district court has broad latitude to 'impose either a Guidelines sentence or a non-Guidelines sentence.'"  United States v. Rigas, 583 F.3d 108, 114 (2d Cir. 2009) (quoting United States v. Sanchez, 517 F.3d 651, 560 (2d Cir. 2008)).

As an initial matter, the nature and circumstances of the instant offense are undoubtedly serious.  Fentanyl is a potent opioid and because it is so potent and relatively cheap. Fentanyl presents an opportunity for drug traffickers to boost profits by diluting it with cutting agents and selling it as or mixed with other drugs that are less potent; for the same reason, fentanyl is more dangerous to drug users who do not know what they are getting or in what proportion.

This factor, however, should be balanced against the defendant's history of serious drug addiction and his remarkable commitment to sobriety and to take control of his life. The government does not dispute that the defendant's offense conduct was driven by his own substance abuse issues, which include an addiction to heroin.  Following his arrest, the defendant made an important decision to enter the POP Program, which requires its participants to demonstrate a willingness to participate in treatment and to comply with the program's stringent conditions.  These expectations include, among other things, sustained sobriety, frequent drug testing and participation in regular meetings with judges to discuss their behavior openly and honestly.  The defendant met all of those requirements and successfully graduated from the program in April 2025.  The government understands that, during his time in the POP program, the defendant gained the respect and admiration of administrators of the program (including judges in this District).  In light of the defendant's lengthy history of addiction and relapse, 18 months of sobriety and completion of the POP program was no small feat.  The defendant's accomplishments are a testament to his determination to turn his life around and lead a law-abiding life.

V.    Conclusion

In light of the above, as well as the additional compelling mitigation set forth in the defendant's submission, the government respectfully submits that a sentence of probation to

3

include participation in the REAP program is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

>Respectfully submitted,
>
>JOSEPH NOCELLA, JR.
>United States Attorney
>
>By:      /s/
>Andrés Palacio
>Assistant U.S. Attorney
>(718) 254-6215

cc:    Clerk of Court (KAM) (by ECF)
       Katherine Wozencroft, Esq. (by ECF)